IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
OCT - 1 2018
JULIA C. DUDLEY, CLERK
BY: /s/ A. Blaylock
DEPUTY CLERK

**JOHNNY QUINTON CANTOR**

and

**VICKIE ROBINETTE CANTOR**                                          **Plaintiffs**

v.                              Civil Action Number 2:18CV36

DEMAND FOR JURY TRIAL FOR THE COMBINED COMPLAINT(S) OF BOTH PLAINTIFFS

**A. J. McQUEEN,**                                                   **Defendant**
in both his official and individual capacities acting
under color of state law as Lee County Deputy Sheriff

# COMPLAINT

The Plaintiffs, Vickie Robinette Cantor and Johnny Quinton Cantor, file this Complaint, and ask the Court for judgment against the Defendant A. J. McQueen in the amount of

## JURISDICTION

1.      This action is brought pursuant to the United States Constitution and 42 U.S.C. §§ 1983, 1985, and 1988 resulting from deprivations and violations, under color of state law, of Plaintiffs' rights and privileges under the Fourteenth Amendment (incorporating the Fourth and Fifth Amendments for a state actor as alleged herein) of the Constitution of the United States. All acts complained of herein occurred in Lee County, Virginia in the Federal Western District of Virginia.

## PARTIES

2.      Plaintiffs are citizens and residents of the United States of America and the Commonwealth of Virginia and resided in the Federal Western District of Virginia for all times relevant to this action.

3. Defendant McQueen is citizen and resident of the United States of America and the Commonwealth of Virginia. At all times relevant to this case, Defendant McQueen was employed as a detective, police officer, deputy sheriff and/or Drug Task Force Agent by the Lee County, Virginia Sheriff's Department, Jonesville, Virginia and all misconduct of the Defendant McQueen giving rise to this claim occurred in Lee County, Virginia in the Federal Western District of Virginia

4. Defendant McQueen is liable for his independent acts of unconstitutional negligent conduct, grossly negligent conduct, reckless conduct and misconduct and/or other illegal conduct that 42 U.S.C. § 1983 prohibits, which proximately caused the events herein.

5. The Court has jurisdiction over this case pursuant to Article III, § 1 of the United States Constitution, 28 U.S.C. §§ 1331 and 1367, and 42 U.S.C. § 1983, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for any pendent and related state law torts or claims. Plaintiffs also seek an award of attorney's fees pursuant to 42 U.S.C. § 1988(b).

## VENUE

6. Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. § 1391(b).

## ASSERTION OF 42 U.S.C. §1983 LIABILITY FOR STATE ACTOR

7. The acts of Defendant McQueen, which are the subject of this cause of action, were conducted under color and pretense of state law in the regular course and scope of his duties as an employee (as detective, police officer, deputy sheriff and/or Drug Task Force Agent) of the Lee County Virginia Sheriff's Department; therefore constituting the status of a state actor. All actions of the Defendants set forth in this Complaint were "under color of state law as the Defendants, in committing

the acts complained of herein, exercised power by virtue of state law and made possible only because the Defendant McQueen was clothed with the authority of state law." [See West v. Adkins, 487 U.S. 42, 49 (1988); Monroe v. Pape, 365 U.S. 167, 172 (liability for acting under color of state law may apply even where state actor's actions violated state law); and color of state concepts are most frequently utilized in 42 U.S.C. 1983 civil actions alleging excessive force and deprivation of civil rights by police officers acting under color of state law-see Graham v. Connor, 490 U.S. 386 (1990).] The Defendant McQueen is sued individually and in his official capacity (as detective, police officer, deputy sheriff and/or Drug Task Force Agent) of the Lee County Virginia Sheriff's Department.

**STATEMENT OF FACTS**
**(with conclusions of law or mixed questions of fact and law supported by authority)**

8. On January 19 through January 20, 2017, Plaintiffs (who are husband and wife) were the target of an undercover "sting operation" conducted by the Defendant McQueen and other law enforcement officers. Defendant McQueen instructed 2 confidential informants to deliver pseudoephedrine (a common precursor for the manufacture of methamphetamine) to the Plaintiffs at their residence. [The Defendant McQueen was in cell phone and text communication with the confidential informants as was proper policy and procedure so all activity of the operation could be recorded and documented.] The plan was that once the pseudoephedrine was successfully, legally and properly delivered to the Plaintiffs, a search warrant would be executed upon their residence for evidence of the manufacture of methamphetamine. [A third suspect target Marsha Ritchie was also with the Plaintiffs but is not a Plaintiff herein.]

9. The confidential informants however advised the Defendant McQueen that the targeted Plaintiffs were not answering their calls; were not at their residence and the Plaintiffs passed the confidential informants on the street but the Plaintiffs would not stop. Accordingly, the Plaintiffs had no

3

contact with the confidential informants; had committed no crime whatsoever and had not committed any acts constituting reasonable, articulable suspicion or probable cause giving rise to any authorized police stop, search and/or seizure. The confidential informant advised that it had gone as far it could and could do no more with the Plaintiffs. At that point, the "sting" operation should have been terminated based upon the confidential informant's assertion that the Plaintiffs were not engaging in illegal activity.

10. The Defendant McQueen however refused to accept this response as the conclusion of a failed "sting"operation and overtly pressured and coerced the confidential informant(s) to "make it happen" with subsequently disclosed discovery which included commentary such as

> "do you know how far these guys [meaning Virginia State Police Task Force agents] have come . . . some have come from Wytheville . . . I'm telling you guys . . . the Commonwealth Attorney is here with us and if this don't happen, he's going to be pissed and he's not going to help you guys out . . . .

11. The pressure and coercion exerted by the Defendant McQueen on the confidential informants was misconduct on the part of the Defendant McQueen and in violation of the constitution, reasonable standards of professional police and investigative actions and all policies and procedures and explicit instructions the Defendant McQueen had received directly from Commonwealth Attorney Fuller Cridlin; Deputy Commonwealth Attorney Sarah Wynn; and his employer Lee County Sheriff Gary Parsons.

12. Under the pressure and coercion improperly exerted by the Defendant McQueen, one of the confidential informants participated in a "meth cook" with different individuals and the Plaintiffs were not present or involved. The evidence from that "meth cook" was placed in a plastic bag. The confidential informant then subsequently ILLEGALLY PLACED AND PLANTED evidence in a plastic bag from a "meth cook" outside the Plaintiff's residence. Even knowing that evidence had been planted and fabricated upon the Plaintiffs, the Defendant McQueen still executed the apparently "contingent" search warrant upon the Plaintiffs' house and residence. [Not surprisingly, the Search Warrant was issued on the

4

sworn Affidavit of the Defendant McQueen.] Upon execution of the search warrant, there was no actual evidence of precursors or manufacture of any drugs or contraband whatsoever and the Defendant McQueen knew at the execution of the search warrant that the evidence had been planted and fabricated by the confidential informant(s) as belonging to the Plaintiffs. Defendant McQueen knew the Plaintiffs were innocent.

13. Nevertheless, despite the innocence of the Plaintiffs and the Defendant McQueen's actual knowledge of planted fabricated evidence by the confidential informants, both Plaintiffs were nevertheless arrested by Defendant McQueen and charged with criminal charges of manufacturing methamphetamine and controlled substances.

14. There were numerous voice recorder recordings and cell phone texts between the Defendant McQueen and the two confidential informants on the night of the "sting operation", the search and the arrests of the Plaintiffs being January 19 through January 20, 2017. The confidential informants were later identified as Jacqueline Young and Bradley Fleenor. These recordings and texts proved the assertions alleged in this Complaint hereinabove that the Plaintiffs were innocent; that evidence had been fabricated and planted in their yard; and that the Defendant McQueen knew it and still proceeded with the search, arrests and subsequent prosecutions of the Plaintiffs. The Defendant McQueen, throughout the prosecution process, told conflicting stories as to the recordings and texts. He told his superior officers and the Commonwealth Attorney's Office prosecutors that no recordings existed and/or that the batteries had died on the recorder. Later he declared that he deleted them because there was nothing of value on them. Subsequently he stated it was so long ago he deleted them. He also informed his superiors and Deputy Commonwealth Attorneys that there was only one confidential informant involved ( a female) when in fact there were two; a male and a female.

15. Notwithstanding the truth, the defendant McQueen then proceeded to obtain arrest warrants in Lee County General District Court based on his sworn false statements charging both Plaintiffs Johnny

Cantor and Vickie Cantor with Manufacturing Methamphetamine in violation of Virginia Code §18.2-248. The cases proceeded through Lee County General District Court as Lee County General District Court Case Number GC17-200 for Johnny Cantor and as Lee County General District Court Case Number GC17-199) and were bound over to Lee County Circuit Court on July 26, 2017 for Johnny Cantor and August 23, 2017 for Vickie Cantor. Indictments were issued by the Grand Jury on September 11, 2017 upon the sworn false testimony of the Defendant McQueen charging both Plaintiff Johnny Cantor (Lee County Circuit Court Case Number F17-111) and Plaintiff Vickie Cantor (Lee County Circuit Court Case Number F17-123) with 1 Count of Manufacturing Methamphetamine and 1 Count of Conspiracy in violation of Virginia Code §18.2-248 (along with 2 unrelated Counts of possession of explosives) which were" apparently" seized in the unconstitutional and illegal search of the Plaintiffs' residence. During the course of the prosecution the Defendant McQueen also submitted a Certificate of Analysis dated June 28, 2017 identifying a specimen of liquid evidence as methamphetamine. This liquid evidence was submitted to the Department of Forensic Science by the Defendant McQueen himself, who of course knew it had been planted as the "meth cook" bag in the Plaintiffs' yard, but nevertheless confirmed as proper evidence.

16. This unconstitutional nightmare of illegal fabricated evidence and unconstitutional prosecution, directly and proximately caused by the Defendant McQueen's actions and omissions, finally ended and the truth was revealed when the defense attorney for the Plaintiff Johnny Cantor filed a Motion for the recordings and texts between the Defendant McQueen and the two confidential informants Jacqueline Young and Bradley Fleenor on the night of the "sting operation" being January 19 and 20, 2017. The Defendant McQueen was informed by the Lee County Commonwealth Deputy Attorney that a subpoena could be issued for the recordings and texts and it is not much of an assumption that the Defendant McQueen may have weighed the consequences of what was happening. However it occurred, the subject recordings between the Defendant and the two confidential informants Jacqueline Young and

Bradley Fleenor on the night of the "sting operation" being January 19 and 20, 2017 were "miraculously" produced intact by the Defendant McQueen to the Lee County Commonwealth Deputy Attorney and had not been lost, deleted, erased and apparently the batteries had not died either as the "energizer bunny" proclaims in commercials available on any standard cable network. Based on this new exculpatory evidence; the surfacing of the recordings; the dishonesty of the Defendant McQueen and the fact that evidence had been fabricated and planted by the confidential informant(s), all charges against both Plaintiffs (including the illegally seized "explosives") were mercifully dismissed November 30, 2017 by *nolle prosequi* on the Motion of the Lee County Commonwealth Attorney. [The third suspect and defendant from the house and "sting operation", Marsha Ritchie, not a Plaintiff herein, also endured the same process as the Plaintiffs and her charges were dismissed December 6, 2017 by *nolle prosequi* on the Motion of the Lee County Commonwealth Attorney.]

17. All of the allegations of this Complaint have been verified by a **Giglio Disclosure Memorandum** issued November 16, 2017 by the Lee County Commonwealth Attorney's Office and a copy of which is attached hereto as Exhibit A.

18. **The Defendant McQueen remains a deputy with the Lee County Sheriff's Department at the filing of this litigation.**

## FEDERAL AND STATE CAUSES OF ACTION/DAMAGES

19. The Defendant McQueen's acts and omissions constitute a federal cause of action since these acts violated Plaintiffs' civil rights and constitutional rights pursuant to 42 U.S.C. § 1983. As stated recently by the Fourth Circuit Court of Appeals in Massey v. Ojaniit, 759 F.3d 343 (4th Cir. 2014):

> We have recognized a due process "'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005) (quoting Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000)); see also, e.g., Halsey v. Pfeiffer, 750 F.3d 273, 295-96 (3d Cir. 2014). ("[B]y fabricating evidence for use in a criminal prosecution, a state actor would violate a defendant's [Fourteenth Amendment due process] rights regardless of whether or not the state actor violated other constitutional rights of the defendant.").

Almost every Federal Circuit has found denials of due process when charges rest on fabricated evidence and which likewise support a 1983 civil rights action for the Due Process violation. See, e.g., Cole v. Carson, 802 F.3d 752 (5th Cir. 2015) (there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated).

Furthermore, "it is well established that a §1983 *Brady* due process claim may be asserted against a law enforcement officer based on the officer's **failure** to disclose favorable material to the prosecutor". See Kyles v. Whitley, 514 U.S. 419, 435, 438-39 (1995). [Emphasis added.] In Carter v. Burch, 34 F.3d 257, 264 (4th Cir. 1994), the Fourth Circuit stated that "a police officer's actions in failing to turn over materially exculpatory evidence to a prosecutor violate[d] [the § 1983 plaintiff's] constitutional rights." When a law enforcement officer's suppression or knowing use of fabricated or false evidence induces a unknown and unintentional *Brady* violation by the prosecution (which is unaware of the existence of the fabricated evidence) there is also a constitutional violation of Due Process which supports a 1983 civil rights action against the officer even though the prosecution was unaware during the time period of the continuing *Brady* violation. [ NOTE: That is precisely what we have here before this Court. There is absolutely no indication that the Lee County Commonwealth Attorney's Office as the prosecution and the Defendant McQueen's fellow officers, superiors or Employer Sheriff had any knowledge whatsoever of the Defendant McQueen's unconstitutional acts and omissions and no fault or liability against them is asserted or intended to be implied. These agencies acted properly by issuing a Gigli disclosure immediately upon their knowledge of the Defendant McQueen's unconstitutional acts and omissions.] A *Brady* violation encompasses three elements: (1) the "evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. Strickler v. Green, 527 U.S. 263, 281-82 (1999). Clearly, these elements are all present in the Plaintiffs' claim.

20. The Defendant McQueen's acts and omissions also constitute common-law and statutory torts under Virginia law over which this Federal Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. These are the torts of false arrest/false imprisonment, trespass (on both real estate and on chattel property), trespass, negligent and intentional infliction of emotional distress and violation of Va. Code § 19.2-59 (statutory illegal search by law enforcement).

21. The Defendant McQueen's acts and omissions were in violation of all policies and procedures of his law enforcement agency and were negligent, grossly negligent, intentional and/or deliberately indifferent and willful and wanton with a reckless disregard for the truth and the Plaintiffs' constitutional rights.

22. As a proximate and direct result of Defendant McQueen's actions and omissions, and the civil rights violations and state torts and violations of State law committed by the Defendant McQueen, the Plaintiffs were deprived of their liberty and their right to Due Process pursuant to the Fifth Amendment; were unconstitutionally subjected to prosecution on fabricated and planted evidence; on false statements, affidavits and oaths by the Defendant McQueen; without the benefit of exculpatory evidence required pursuant to the *Brady* doctrine; were falsely arrested and imprisoned (the Plaintiff Johnny Cantor remained in jail on these charges for eight and one-half months and his wife Plaintiff Vickie Cantor spent 23 days in jail); were personally subjected to and had their residence and property subjected to illegal and unconstitutional search, seizure and detention in violation of the Fourth Amendment and Fourteenth Amendment; suffered trespass in violation of Virginia state law; endured emotional distress; suffered financial loss as the (1) Plaintiff Vickie Cantor lost her job at Get-It Market as a result of the arrest and prosecution; (2) the Plaintiffs' residence was broken into and a robbery of their personalty, goods and chattels occurred during the false imprisonment in jail; and (3) had to post Bond and other costs and expenses related to securing release; and were, to top it off, unnecessarily charged

with probation violations based on the illegal, unconstitutional and false arrest and imprisonment and had to endure additional prosecution and court proceedings.

23. As a result of the Federal constitutional and civil rights violations committed by the Defendant McQueen against Plaintiffs, and Defendant McQueen's unlawful and tortious conduct pursuant to state law and the illegal search in violation of Virginia Code § 19.2-59 (over which the Court has supplemental jurisdiction), Plaintiffs are entitled to an award of compensatory damages for their injuries, harms, and losses, and are also entitled to punitive damages (supported by the Defendant McQueen's grossly negligent, reckless, intentional and/or deliberately indifferent acts and omissions and egregious conduct.)

## FEDERAL CAUSE OF ACTIONS

### COUNT NO. 1

### USE OF FABRCIATED EVIDENCE AGAINST PLAINTIFFS

24. The conduct of the Defendant McQueen by utilizing and failing to disclose his use of fabricated and planted evidence, while engaged in under color of law, deprived the Plaintiffs of rights secured to them by the Constitution of the United States, including, but not limiting to, their Fourteenth Amendment Right (incorporating the Fourth and Fifth Amendment as applicable to a state actor) to Due Process of Law, including the right to be free from illegal and unconstitutional search, seizure, arrest, detention and prosecution.

### COUNT NO. 2

### VIOLATION OF THE *BRADY* DOCTRINE RIGHTS OF THE PLAINTIFFS

25. The conduct of the Defendant McQueen by failing to disclose the truthful and factual evidence which would have exonerated the Plaintiffs and which evidence was undisputedly exculpatory, favorable and capable of use as impeachment evidence, while engaged in under color of law, deprived the Plaintiffs of rights secured to them by the United States Supreme Court Decision in *Brady,* and further

violated their Fourteenth Amendment Right (incorporating the Fourth and Fifth Amendment as applicable to a state actor) to Due Process of Law and the right to be free from illegal and unconstitutional search, seizure, arrest, detention and prosecution based on planted and fabricated evidence.

## VIRGINIA STATE LAW CLAIMS

## COUNT NO. 3

## FALSE ARREST/FALSE IMPRISONMENT

26. The Defendant McQueen's acts and omissions violated Plaintiffs' common law and Virginia constitutional right to be free of illegal, tortious and unconstitutional arrest and detention by a state actor.

## COUNT NO. 4

## TREPASS ON REAL ESTATE AND CHATTELS

27. The Defendant McQueen's acts and omissions violated Plaintiffs' common law and Virginia constitutional right to be free of unauthorized, illegal, tortious and unconstitutional trespass by a state actor.

## COUNT NO. 5

## VIOLATION OF VA. CODE § 19.2-59

28. The foregoing conduct of the Defendant McQueen constitutes a violation of Virginia Code § 19.2-59 in that the Defendant McQueen illegally searched and seized certain of Plaintiffs' real estate, goods and chattel property.

## COUNT NO. 6

## NEGLIGENT/INTENTIONAL INFLICTION OF EMTIONAL DISTRESS

29. The foregoing conduct of the Defendant McQueen constitutes the negligent/intentional tortious infliction of emotional distress upon the Plaintiffs.

11

**WHEREFORE**, Plaintiffs pray that the Court do the following:

1. Enter judgment in Plaintiff Johnny Cantor's favor, against defendant McQueen, awarding compensatory damages in the amount of $2,000,000.00.

2. Enter judgment in Plaintiff Johnny Cantor's favor, against defendant McQueen, awarding punitive damages in the amount of $500,000.00.

3. Enter judgment in Plaintiff Vickie Cantor's favor, against defendant McQueen, awarding compensatory damages in the amount of $2,000,000.00.

4. Enter judgment in Plaintiff Vickie Cantor's favor, against defendant McQueen, awarding punitive damages in the amount of $500,000.00.

5. Enter judgment in both Plaintiffs' favor, against defendant McQueen, awarding costs as well as attorney fees.

6. Plaintiffs further pray for such other relief against defendant McQueen as may be just and proper, including pre-judgment and post-judgment interest.

7. In accordance with Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial.

**JOHNNY QUINTON CANTOR AND VICKIE CANTOR**

**BY COUNSEL**

s/ Richard D. Kennedy VSB#32883
Counsel for Plaintiffs
**KENNEDY LAW OFFICE**
P. O. Box 357
Wise, VA 24293
276-328-0918; Fax: 276-679-2112
skwiselaw2@hotmail.com

s/ Jeremy O'Quinn VSB# 78891
Counsel for Plaintiffs
**THE O'QUINN LAW OFFICE**
P. O. Box 2327
Wise, VA 24293
276-679-2111; Fax: 276-679-2112
theoquinnlaw@gmail.com